CIRILO NIEVES, demandante y apelante, *v.* WHITE STAR BUS LINE, INC., demandada y apelada.

No. 6239.—*Sometido:* Noviembre 21, 1934. *Resuelto:* Noviembre 21, 1935.

*Diego O. Marrero y A. Quirós Méndez,* abogados del apelante; *J. Henri Brown, C. Ruiz Nazario. G. E. González y G. Benítez Gautier,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

Ocurrió un accidente. El demandante sostenía que estaba dentro de una guagua de la White Star Line al ocurrir el mismo, es decir, que era un pasajero. La demandada presentó prueba tendente a demostrar que el demandante nunca

estuvo dentro del vehículo y que el accidente le ocurrió por haber chocado con un poste del teléfono mientras caminaba distraídamente cerca del lugar por donde pasaba el ómnibus.

En realidad, uno de los principales testigos de la demandada lo era un policía insular. Este hizo una relación detallada de lo sucedido. Si bien hubo considerable prueba de parte del demandante y de sus testigos al efecto de que el accidente tuvo lugar mientras el demandante se desmontaba del vehículo, el juez sentenciador resolvió el conflicto contra el demandante. El policía no era el único testigo de la demandada, aunque sí fué uno muy importante.

■ El demandante ofreció como prueba una comunicación hecha por el jefe de distrito al jefe de la policía al tiempo de ocurrir el accidente. El contenido del documento era como sigue:

"1.—El día 7 del actual, a las 11:05 A.M. y en la Ave. José Martí, Santurce, la guagua No. P–76, propiedad de la White Star Line, Inc., de San Juan, asegurada en la Porto Rican and American Insurance Co., guiada por David Camerón, chauffeur No. 29863, residente en la calle Europa, No. 44, parada 22, arrolló a Cirilo Nieves, residente en la calle Cantagallo, Santurce, ocasionándole la fractura completa del fémur tercio medio de la pierna izquierda y heridas y contusiones en distintas partes del cuerpo, de pronóstico reservado, siendo recluído en el Hospital Municipal.

"2.—El guardia Ramón Izquierdo, No. 233, que presenció los hechos y los testigos José Ocasio. residente en la calle del Tren, Pda. 4, Puerta de Tierra, y Ramón Bonilla, residente en la Calle William, No. 13, Bo. Obrero, informan que el accidente ocurrió en momentos que el lesionado caminaba con dirección a la parada 44 por la derecha, mirando hacia atrás y chocó con un poste del teléfono, cayendo sobre el pavimento, atravesado el cuerpo en la calle, siendo alcanzado por la guagua que marchaba en la misma dirección y en ese momento le daba alcance.

"3.—El caso fué sometido a la consideración del Hon. Juez de la Corte Municipal, Sección Primera, quien acusó a David Camerón de un delito de infracción a la ley de automóviles, artículo 12 (c), señalándole $1,000.00 de fianza para permanecer en libertad provisional."

Mientras ocupaba la silla testifical, el policía Izquierdo declaró que este informe era copia del que él había hecho en el libro de novedades. El demandante se opuso, substancialmente fundado en que el testigo no había dicho que el documento presentado era copia fiel del asiento hecho en el libro de novedades; que era tan sólo copia de un informe dado a la compañía de seguros por el jefe; que no era copia literal del asiento efectuado en dicho libro o debidamente certificado por la persona a cargo del mismo.

La objeción tenía quizás visos de razón. Empero, la situación que tenemos ante nos no es un caso ordinario de probar el contenido de un documento oficial mediante copia certificada, o un caso en que el contenido de un documento es un elemento esencial de la controversia. La teoría del juez de distrito al admitirlo fué que el mismo contribuía a corroborar el testimonio del policía en relación con el informe hecho por éste el día del suceso. El policía mismo, según declaró, había efectuado el asiento en el libro de novedades y en efecto decía que el documento que tenía a la vista era una copia del asiento contenido en el libro de novedades, conforme el mismo fué hecho por él.

Según indica la apelada, no se trata de un caso en que se presenta un certificado y en que no hay oportunidad de investigar el origen del mismo, sino que aquí se puso al policía en la silla de los testigos y éste declaró respecto a los detalles del accidente y que había practicado el asiento. El demandante tuvo amplia oportunidad para repreguntar al testigo, tanto respecto a los detalles del accidente como sobre el asiento efectivamente hecho. No hallamos que se cometiera error.

De haber algún error, el mismo no fué perjudicial debido a la coincidencia del informe con la prueba y al testimonio incontrovertido de haberse hecho el asiento.

El apelante se queja de otros errores, pero puede considerarse que todos se refieren a la indebida apreciación

de la prueba por la corte. Varios testigos oculares, o supuestos testigos oculares, dicen que el demandante viajaba como pasajero, mientras que otros manifiestan lo contrario, entre éstos, el policía que ya se ha dicho. Ahora bien, a la corte no se le exige, según sugiere el apelante, que haga un bosquejo terminado de la forma en que resolvió el conflicto. Puede haber uno o más testigos del demandante y uno o más testigos de la demandada y, sin embargo, muy frecuentemente es imposible para la corte exponer las razones por las cuales creyó más bien a un grupo de testigos que a otro. En *Deliz* v. *Deliz*, 40 D.P.R. 77, dijimos:

"Otro señalamiento de error se funda en haber dejado la corte de hacer conclusiones más específicas. El tribunal dijo que se habían probado las alegaciones de la demanda y que el caso era uno en que había conflicto de prueba. De la opinión es aparente que la corte creyó las declaraciones ofrecidas por la demandante. La ley aprobada por la Legislatura en 1925 (Ley núm. 25 de 1925, p. 179) dice que en caso de conflicto de prueba el juez debe expresar las razones que lo inducen a llegar a una conclusión. Cuando aparece que la corte creyó a un grupo de testigos más bien que a otro, poco más puede exigirse. No creemos que fuera la intención del legislador que el juez manifestara que un testigo no merece crédito debido a sus palabras, su actitud o sus gestos, y dudamos que la Legislatura tenga derecho a exigirle a un juez requisitos tan minuciosos. Sea ello como fuere, surge la cuestión relativa a lo que debe hacer este tribunal de apelación en caso de que el juez deje de exponer sus conclusiones de hecho. ¿Debemos devolver el caso para nuevo juicio, o debemos exigirle al juez, después de muchos meses de celebrado el juicio, que revele todas sus más íntimas ideas? Resolvemos lo contrario. Frecuentemente. el juzgador no puede exponer todos los motivos que ha tenido para llegar a una conclusión de hecho. Hay envuelta cierta cantidad de intuición en el proceso. El apelante, además, no solicitó conclusiones adicionales. Esto, al igual que el dejar de solicitar instrucciones mejores o corregidas en causas criminales, constituye una renuncia por la parte perdidosa, o algo similar. . ."

También, en *Franqui* v. *Fuertes Hnos., S. en C.,* 41 D.P.R. 224, manifestamos:

"En lo que respecta al artículo 227, no sólo la demandada dejó de hacer un señalamiento de error sobre el particular, sino que dejó igualmente de solicitar de la corte que hiciera un análisis adicional al que se hizo en este caso. Hemos indicado antes que sería imposible para una corte expresar todas las razones que le indujeron a creer o a no creer a determinado testigo o grupo de testigos, y un gesto olvidado podría producir una convicción en la mente del juez..."

El apelante en su alegato hace extractos de las declaraciones de los testigos. Insiste en que el testimonio de éstos, y especialmente el del demandante, demuestran un caso prima facie definitivo, de no demostrar una preponderancia de la prueba en su favor. Desde luego, el juzgador de un caso tiene derecho a dudar, aun de testimonio incontrovertido, aunque ello debe hacerse con gran cautela. Pero cuando existe un conflicto, es más fácilmente posible que un juez no crea cualquiera de las declaraciones de los testigos del demandante. Por supuesto, entonces no importa mucho que la prueba del demandante, de ser creída, tienda fuertemente a probar su caso.

Hemos prestado atención un poco más minuciosa al ataque hecho a la declaración del policía y a la del testigo Bonilla, que era el *starter* en el sitio en que ocurrió el accidente. El mismo ocurrió en la calle de Loíza, inmediatamente al este del sitio en que el tranvía de la calle del Parque la cruza. El *starter* Bonilla se hallaba en la acera al oeste de la vía, mientras que el policía estaba en la calle inmediata a éste. El demandante cayó contra un poste a una distancia que calculamos como de 75 pies.

El testimonio de cada uno de estos dos testigos es que el demandante venía del este al ser arrollado por la guagua, después de chocar contra el poste y caer. El apelante insiste enfáticamente en que ni el policía Izquierdo ni el *starter* podían haber visto al demandante desde sus respectivas posiciones, ya que había otro poste de la compañía del tranvía que interceptaba la mirada. Ni del testimonio ni de las

fotografías hallamos que la guagua en realidad obstruyera la vista.

En lo que a las posibilidades de observación por parte del *starter* se refería, existe un poco de peso en la contención del demandante, mas con la fotografía no nos convence de que el *starter* no pudo haber visto cuanto declaró. En lo que se refiere al policía, que es el testigo estelar y en quien principalmente se fundó la corte, nada hallamos que le impidiera ver por completo el accidente desde el sitio en que se encontraba. La fotografía demuestra que los dos postes no están en la línea visual de una persona que esté parada en la acera occidental, y especialmente en la de una persona que esté parada en la calle. El testimonio de otros dos testigos tiende a sostener a Bonilla y a Izquierdo.

*Debe confirmarse la sentencia apelada.*